(No. 19698.—

Iver Norman Lawson, Appellant, *vs.* The Illinois Merchants Trust Company *et al.* Appellees.

*Opinion filed October 19, 1929—Rehearing denied Dec. 6, 1929.*

POPPENHUSEN, JOHNSTON, THOMPSON & COLE, CLARK M. CAVENEE, and WILLARD C. McNITT, (FLOYD E. THOMPSON, of counsel,) for appellant.

WILSON, McILVAINE, HALE & TEMPLETON, DAVID O. DUNBAR, WHEELOCK, NEWEY & MACKENZIE, CUTTING, MOORE & SIDLEY, and MONTGOMERY, HART & SMITH, (J. F. DAMMANN, JR., JOHN R. MONTGOMERY, WILLIAM P. SIDLEY, REX MACKENZIE, NORMAN H. PRITCHARD, JR., JAMES F. OATES, JR., and JOHN P. BROWN, of counsel,) for appellees the Illinois Merchants Trust Company *et al.*

GARDNER & CARTON, and BURRY, JOHNSTONE, PETERS & DIXON, for appellees William Harrison Bradley *et al.*

Mr. CHIEF JUSTICE FARMER delivered the opinion of the court:

Iver Norman Lawson filed the bill in this case to construe the will of his father, Iver Lawson, who executed the instrument in April, 1871, and died October 3, 1872. Iver Lawson left surviving his wife, who was forty-six years old, and their three children, viz., Victor F., who was then twenty-two years old, Carrie, nineteen years old, and Iver Norman, complainant, seven years of age.

By the second paragraph of his will Iver devised and bequeathed to his wife, Malinda, one-third of all his personal property after payment of debts and funeral expenses and one-third of the net income from the testator's real estate. The provision for the wife, the will said, was in

lieu of dower and other claims against testator's estate. Paragraphs 3 to 7 of the will are as follows:

"3rd. All the rest and residue of my personal estate after the payment of my just debts and the above bequests to my wife and all my real estate, I hereby give, devise and bequeath to my children Victor F. Lawson, Carrie Lawson, Norman Iver Lawson and such other child or children as may hereafter be born to me, in equal parts share and share alike to each of them (saving to my said wife always during her natural life one-third part of the net income from my real estate) and in the event that either of my said children shall die without leaving lawful issue surviving then and in that event the share of the child so dying without lawful issue surviving shall descend to and become the estate of the survivor or survivors of my said child or children so dying, as the case may be.

"4th. I hereby order and direct that no part of my said estate (except that part herein bequeathed to my wife) shall be divided previous to the year of our Lord one thousand eight hundred and eighty-five (A. D. 1885) but that my executors apply to each of my said children so much of their respective shares as may be necessary to care for and provide for my said children in a proper manner and that the residue of the bequest herein made to my said children be invested in such manner as in the discretion of my executors will be most beneficial and advantageous to the interest of my estate and the interests of my said children.

"5th. I hereby give and grant unto the executors of this my last will and testament and to whichever of them who may take upon himself or themselves the execution of the trusts herein and hereby conferred and to the survivor or survivors of them full power and lawful authority to sell for such price and upon such terms of payment as to my said executors and to whichever of them may take upon himself or themselves the execution of the trust herein and hereby conferred or the survivor or survivors of them may

deem for the best interests of my estate all the real estate of which I may die seized, situate as what is known as the William tract in the old Chicago City Cemetery (now Lincoln Park) in the city of Chicago in Cook county in the State of Illinois and also in the same manner to sell all the real estate of which I may die seized situate outside of the present limits of the said city of Chicago in Cook county in the State of Illinois, except my place now occupied by me as a residence in Lake View in said Cook county and I also give and grant unto my executors and to whichever of them may take upon himself or themselves the execution of the trusts herein and hereby conferred and to the survivor or survivors of them full power and lawful authority as executors of this my last will and testament, to make, execute, acknowledge and deliver to the purchasers of said real estate any and all necessary and proper deeds of conveyance of the title of the same with or without covenants of warranty and to use the proceeds derived from such sale or sales in improving, enlarging and rendering more productive the residue of my estate.

"6th. I hereby give and grant unto my said executors and to whichever of them may take upon himself or themselves the execution of the trusts herein and hereby conferred and to the survivor or survivors of them full power and lawful authority to execute as in their discretion may be deemed for the best interests of my estate all necessary leases of my said real estate for such rental and upon such conditions and for such length of time (not exceeding the year A. D. 1885) as my executors may deem proper and for the best interest of my estate and my said children, and generally to take exclusive charge and control of all my estate (except the bequest hereinbefore made to my wife of one-third of my personal estate after the payment of debts) and to manage the same in such manner as in their discretion will most contribute to the preservation and growth of the same.

"7th. I hereby nominate my son Victor F. Lawson and my friends Knud Langeland and Andrew Nelson, all of the city of Chicago in Cook county in the State of Illinois as executors of this my last will and testament and I hereby waive the giving of any bond or other security by my said executors or either of them for the performance of the duties and execution of the trusts herein and hereby conferred upon them as executors of this my last will and testament."

The executors acted jointly as such until the estate was closed, in November, 1877, and also thereafter as trustees until 1888, when two of them died. Victor F. Lawson, the survivor, then acted alone until his death, in 1925. He left no child or children surviving, and his only heirs were his brother, Iver Norman Lawson, and the two children of his deceased sister, Carrie, who married William Bradley and died in 1916.

Appellant contends that Victor F. Lawson did not take an indefeasible title to any part of his father's estate, but that by virtue of the devise over in the father's will the title to Victor's share in the estate vested in appellant, as the survivor, upon Victor's death without a child surviving him. It will be necessary to determine when the title of the children of Iver Lawson became indefeasible. The gift to them was of two-thirds of the personal estate and all of the real estate, subject to the widow's right to one-third of the net income, and was not preceded by any particular prior estate and was not to become indefeasible if either child should die "without leaving lawful issue surviving," in which latter event the estate was to go to the survivor or survivors.

The time of death of a child without issue, referred to in the will, was at any time the death occurred. Appellees contend that the devise became indefeasible in the devisees of Iver Lawson upon the death of the widow or the termination of the trust created by the will. The decree

found the estate was closed by the executors November 30, 1877, and the real and personal estate was delivered by the executors to the trustees and remained in the hands of Victor F. Lawson until his death, in August, 1925, as agent of the devisees of Iver Lawson, and was not separated until after the death of Victor; that the proper construction of the will is, that Iver's children each took a one-third interest in his residuary estate, subject to the right of the widow to one-third of the net income from the real estate during her life and subject to be divested in case of the death of a child of Iver without issue surviving before the time for distribution, which was to occur not later than the death of the widow, in the event she should die after January 1, 1885; that the widow died in 1896, and the trust then terminated and the distribution was then to be made, and the interest of each child of Iver became absolute and indefeasible even if a child died later without issue surviving; and the fact that Victor continued to control and manage the property did not affect the rights of the beneficiaries under the will.

Appellees contend that where the will establishes an estate precedent to the estate taken by the devisees, the termination of the precedent estate is the time limit before which the death of the legatee must occur or the gift becomes indefeasible in him. It is the contention of appellees that under Iver Lawson's will there was a precedent estate in others than his legatees, to-wit, a trust estate created for the purpose of assuring to the widow one-third of the net income from the real estate and assuring provision for Iver's children until the youngest should become twenty years of age, and at the widow's death the three children each took an indefeasible title; that on grounds of public policy the construction of a will must be adopted which vests an indefeasible estate at the earliest possible time.

The time of death of a child of Iver Lawson referred to in the third paragraph of his will is death at any time.

The language is, that if death of a child without issue surviving occurred, "then and in that event" his interest should go to the survivor. We find no language in the will indicating the testator. meant any other time than death of a devisee at any time. *Liesman* v. *Liesman,* 331 Ill. 287; *Webbe* v. *Webbe,* 234 id. 442; *Strain* v. *Sweeny,* 163 id. 603; *Clark* v. *Leavitt,* 330 id. 350; *Lee* v. *Roberson,* 297 id. 321; *Gavvin* v. *Carroll,* 276 id. 478; *Fulwiler* v. *McClun,* 285 id. 174.

The gift to the children of Iver Lawson was not subject to any intervening estate but was to them directly, the real estate subject to the widow's right to one-third of the net income. She had no interest in the personal estate given them and the trustees took no title thereto. They were given power to sell and convey to "purchasers,"—not to the devisees,—and to apply so much of the children's share as may be necessary to provide for them in a proper manner, with power to invest, in their discretion, as will be most advantageous to the interest of testator's estate. The creation of trustees and the execution of the discretionary powers granted did not require vesting title in them, and the will did not vest them with title. (*Defrees* v. *Brydon,* 275 Ill. 530; *Drake* v. *Steele,* 242 id. 301; *Black* v. *Bailey,* 142 Ark. 201; *Ducker* v. *Burnham,* 146 Ill. 9; *West* v. *Fitz,* 109 id. 425; *Page* v. *Davidson,* 22 id. 111; *Lambert* v. *Harvey,* 100 id. 338; *Emmerson* v. *Merritt,* 249 id. 538; *Knight* v. *Gregory,* 333 id. 643.) The testator's intention was that title defeasibly pass to his children without any conveyance from the trustees. (*Harvey* v. *Ballard,* 252 Ill. 57.) The will creating trustees and conferring upon them certain powers fixed no time for the exercise of those powers or the termination of the trust. The powers granted were discretionary. The termination of the trust must be fixed by the will. (*McCartney* v. *Osburn,* 118 Ill. 403; *Nixon* v. *Nixon,* 268 id. 524.) Such cases as *Lachenmyer* v. *Gehlbach,* 266 Ill. 11, and other like cases, have no ap-

plication, because in those cases there was a life estate preceding the devise to testator's children.

As we construe the will no particular estate preceded the devise to testator's children, except that the widow was to have for life one-third of the net income from the real property. While trustees were designated and were given certain powers, no title was vested in them. No time was fixed by the will for distribution except the death of a child or children leaving no surviving issue, and there never was any distribution of the estate or termination of the trust before the death of Victor F. Lawson. The estate remained in the hands of the trustees, and of Victor, the survivor of them, until his death, at which time he was seventy-five years of age. The devisees and the children of the deceased daughter received all the net income for a period of twenty-nine years after the death of Iver Lawson's widow. No objection was made by anyone that the property was not distributed. Apparently the devisees did not think that time for distribution had arrived, although the widow of Iver Lawson died in 1896. The will provided that no part of Iver Lawson's estate, except the part bequeathed to his wife, should be divided prior to 1885. It gave testator's widow one-third of the net income from his real estate but gave a defeasible fee in all to the three children, subject to the widow's right to one-third of the net income. Victor never had any issue, and it was not known until his death whether the executory devise over would take effect. Until his death he had the title to his share of his father's property, subject to be divested if he died without leaving issue surviving. Whether he would leave issue surviving could not be determined at any time before his death. It was therefore not an unreasonable interpretation of the will that there should be no distribution of the estate until that contingency was determined. The will itself stated no different time for distribution.

The two Bradley children, who are appellees here and represented by separate counsel, agree with appellant in his contention that the testator, their grandfather, expressed his intention that the shares or interest of his children in his estate were subject to the condition subsequent that the estate of a child dying without leaving lawful issue surviving would be divested, but they contend that upon Victor F. Lawson's death without issue the one-third of Iver Lawson's estate enjoyed by Victor during his lifetime passed under the will, one-half to Iver Norman Lawson, the appellant, and the other half to them as the children of the testator's deceased daughter, Carrie Bradley. Appellant contends that the two Bradley children took no interest in Victor's share of his father's estate because they were not included in the words "survivor or survivors," used in the executory devise. There is in the will no apparent intention of the testator that the issue of either child should take instead of its deceased parent, under the executory devise, if another of the testator's children died leaving no surviving issue. The devise over in that event was to the survivor or survivors of the testator's child or children so dying. So on the death of Victor without issue surviving, the share devised to him defeasibly passed under the will to Iver Norman Lawson as the only surviving child of the testator. We are aware that there is some authority supporting a different construction of this part of the will, but in our opinion the construction we have given it gives effect to the testator's intention and does not violate any rule of law or of public policy.

We have endeavored in construing this will to give effect to the testator's intention. The language of wills is different, and unless the language is the same, or substantially the same, a decision construing one will is of little value in the construction of another one. The rules for construction of wills involving future interests are in many instances amazingly technical in attributing a meaning to

the language used which it may be reasonably apparent the testator did not have in mind or intend. The fundamental rule is that the intention of the testator governs, and technical rules will not be permitted to defeat the intention of the testator when not in violation of a rule of law or public policy. We cannot from the language used in this will construe it to mean otherwise than that the testator intended his estate to go to his children and their descendants. He gave his children defeasible titles to two-thirds of his personal estate and all of his real estate, subject to the widow receiving one-third of the net income from the real property. The condition of defeasance was that any of them die without lawful issue surviving.

We have not quoted from cases cited. They sustain, in our judgment, the views we have expressed. Neither have we cited or quoted from many cases cited in the voluminous and able briefs of counsel. We have endeavored only to follow the fundamental rule in will construction, viz., give effect to the intention of the testator.

In our opinion the court should have construed the will whereby the share or interest in the estate of Iver Lawson given defeasibly to Victor F. Lawson, on the latter's death without leaving surviving issue passed to appellant.

Among the defendants to the bill were the executor and trustee of the estate of Victor F. Lawson, deceased, the Bradley heirs, and four legatees under the will of Victor. The decree is that the one-third of Iver Lawson's residuary estate was the property of Victor at his death. His executor took possession of and claimed it as Victor's property, and the Bradleys claimed an interest in it. It was therefore necessary to construe the will. Separate counsel represented each of the defendants, and the court decreed that all the solicitors be allowed fees payable out of the Iver Lawson estate. It does not seem equitable that the solicitors of the legatees and beneficiaries under the will of Victor Lawson should be paid out of Iver's estate. The Victor

Lawson estate was a very large one, and his legatees, the Chicago Congregational Missionary and Extension Society, the Young Men's Christian Association of Chicago, the Chicago Theological Seminary, and the New England Congregational Church of Chicago, were given several millions of dollars. The court erred in allowing solicitor's fees. Fees should have been allowed to the complainant, the Bradley heirs and the executor and trustee of the Victor Lawson estate.

The decree is reversed and the cause remanded, with directions to enter a decree in accordance with this opinion.

*Reversed and remanded, with directions.*